# EXHIBIT C

EQUIPMENT LEASE AGREEMENT

This Equipment Lease Agreement ("**Lease Agreement**") is made as of February 20, 2025 (the "**Effective Date**") by and between TECHNICAL METALS INC., an Illinois corporation, with offices located at 1301 W. Oak Street, Fairbury, Illinois 61739 ("**Lessor**") and TECHMETALS, LLC, an Illinois limited liability company, with offices located at 1284 Horizon Boulevard, El Paso, Texas 79927 ("**Lessee**").

WHEREAS, in connection with, and conditioned on the closing of the transaction as contemplated by that certain Asset Purchase Agreement by and between Lessor and Lessee ("**APA**"), dated on or about the date hereof, Lessor desires to lease to Lessee the Equipment (as defined herein), and Lessee desires to accept the lease of the Equipment;

NOW THEREFORE, in consideration of the mutual covenants, terms and conditions set out herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. DEFINITIONS. (a) "**Schedule**" shall mean the schedule attached to this Lease Agreement in Exhibit A; (b) "**Equipment**" shall mean all units of equipment and other property described in the Schedule, together with all accessories, upgrades, additions, substitutions, replacement parts, tools, software licenses, contract rights, subleases, permits, licenses, chattel paper, warrant and maintenance agreements and general intangibles pertaining thereto now or hereafter arising, and all proceeds from any of the foregoing (including any insurance proceeds); (c) "**Fair Market Value**" shall mean the amount of money to be paid for the Equipment by a fully informed and willing buyer/user (including a lessee in possession) from a fully informed and willing seller assuming: (i) an arm's length transaction with neither party under the compulsion to buy or sell; and (ii) the Equipment is valued on a fully assessment and operational basis (including therein all necessary deinstallation, reinstallation and engineering costs) and is in the condition required by this Lease Agreement; and (d) "**Lease Agreement**" shall mean this Lease Agreement and the Schedule, and any other written agreements by and between Lessor and Lessee with respect to this Agreement, the Schedule or the Equipment and any amendments to any of the foregoing. Additional capitalized terms are defined where used herein.

2. LEASE OF EQUIPMENT. Subject to the conditions set forth herein, Lessee agrees to lease from Lessor the Equipment.  Lessee agrees and acknowledges that all of the Equipment has been specifically selected by and delivered to Lessee, that Lessee has had a reasonable opportunity to inspect the Equipment, and that Lessee has unconditionally and irrevocably accepted the Equipment as conforming in all respects based solely on Lessee's own information and judgment, and Lessee agrees that it will not reject or revoke its acceptance of the Equipment for any reason.

THIS LEASE AGREEMENT IS NON-CANCELABLE AND NON-TERMINABLE BY LESSEE AND LESSEE MAY NOT REPAY ANY RENTS OR OTHER OBLIGATIONS HEREUNDER WITHOUT THE WRITTEN CONSENT OF LESSOR. The Lease Agreement is a net lease, and Lessee's obligation to pay the rents and other amounts due hereunder are absolute, unconditional and independent obligations not subject to abatement, diminution, suspension, deferment, reduction or offset for any reason including without limitation: (1) any claims of Lessee against Lessor or the manufacturer of the Equipment; (2) any defect in, damage to, or loss or destruction of any unit of Equipment however arising; or (3) any interference with Lessee's use of any unit of Equipment by any third party (including any governmental body).  IT IS THE EXPRESS INTENTION OF THE PARTIES HERETO THAT ALL RENTS AND OTHER AMOUNTS PAYABLE BY LESSEE TO LESSOR HEREUNDER SHALL CONTINUE TO BE PROMPTLY AND UNCONDITIONALLY PAID IN ALL EVENTS.

Lessee acknowledges that this Lease Agreement constitutes a "finance lease" under Article 2A of the Uniform Commercial Code.  Lessee further acknowledges that Lessor's sole obligation to Lessee hereunder is to not interfere with Lessee's quiet enjoyment of the Equipment so long as Lessee is not in default hereunder.  To the extent permitted by law, Lessee unconditionally and irrevocably waives any and all rights and remedies against Lessor at law or in equity. If this Lease Agreement is recharacterized under applicable law as a secured financing or a lease intended for security, this Lease Agreement shall be deemed a security agreement and Section 2 hereof shall be deemed to grant Lessor by Lessee a lien on and first priority security interest in the Equipment and all proceeds thereof, to secure the payment of Lessee's obligations under this Lease Agreement. Lessor and Lessee each agree to execute, acknowledge, deliver, file, and record, or cause to be executed, acknowledged, delivered, filed, and recorded such further documents (including without limitation UCC financing statements), and to do all such things and acts, necessary to ensure that such security interest would be a perfected first priority security interest under applicable law.

Lessee represents to Lessor that Lessee has selected the type, quantity and supplier of the Equipment and that the Equipment is of a design, size, quality and capacity required by Lessee and is suitable for Lessee's purposes.  Lessor is not a manufacturer or supplier of the Equipment nor an agent of the manufacturer or supplier of the Equipment and Lessor does not endorse or promote any item of Equipment.  No representation or promises made by any manufacturer, supplier or distributor of the Equipment shall be binding on Lessor.  LESSOR MAKES NO WARRANTY OR REPRESENTATION (EITHER EXPRESS OR IMPLIED) TO LESSEE AS TO THE FITNESS FOR A PARTICULAR PURPOSE, QUALITY, DESIGN, CONDITION, CAPACITY, SAFETY, SUITABILITY, MERCHANTABILITY OR PERFORMANCE OF THE EQUIPMENT (INCLUDING ITS CONFORMITY WITH APPLICABLE LAW AND REGULATIONS), TITLE TO THE EQUIPMENT, OR ANY OTHER MATTER WHATSOEVER.  LESSEE AGREES THAT THE EQUIPMENT IS LEASED "AS IS" AND "WHERE IS" AND THAT ALL RISKS REGARDING THE EQUIPMENT ARE TO BE BORNE SOLELY BY LESSEE INCLUDING, WITHOUT LIMITATION, ANY LOSSES OR DAMAGES DUE TO ACTS OF GOD, STRIKES, GOVERNMENTAL ACTION OR OBSOLESCENCE. LESSOR SHALL NOT BE LIABLE TO LESSEE OR ANY OTHER PARTY FOR ANY CLAIM OR MATTER PERTAINING TO THE EQUIPMENT WHATSOEVER INCLUDING, WITHOUT LIMITATION, ANY LOSSES OR DAMAGE (DIRECT, INDIRECT, OR CONSEQUENTIAL) FROM BUSINESS INTERRUPTION, LOSS OF PROFITS, NONDELIVERY OR LATE DELIVERY OF THE EQUIPMENT, IMPROPER INSTALLATION OR DESIGN OF THE EQUIPMENT, FAILURE OR IMPROPER OPERATION OF THE EQUIPMENT, BREACH OF ANY WARRANTY OR REPRESENTATION MADE BY THE MANUFACTURER OF THE EQUIPMENT, OR ANY INJURY TO PERSONS OR PROPERTY. LESSOR MAKES NO REPRESENTATIONS, WARRANTIES OR PROMISES WITH REGARD TO THE TAX OR ACCOUNTING TREATMENT OF THE LEASE AGREEMENT OR THE INTEREST OF LESSOR AND LESSEE AS REGARDS THE EQUIPMENT.

All of Lessee's obligations to Lessor now existing or hereafter arising under this Lease Agreement as well as any other agreements between the parties are secured by the Equipment.  All of Lessee's obligations arising from this Lease Agreement, whether presently existing or arising in the future, are secured by the security interests created by all security agreement(s), collateral agreement(s), and mortgage(s) executed in connection with any promise of Lessee to pay money to Lessor, now or in the future, or to pay money to any other entity affiliated with Lessor by common ownership (the "**Pledge Agreements**"), whether the Pledge Agreements are presently existing or arise in the future, and such other obligations are secured by the Equipment (regardless of whether the Equipment is owned by Lessee or Lessor), and all such agreements are amended by this Lease Agreement accordingly without a further writing.

Lessee acknowledges that it has reviewed and approved all contracts and agreements pertaining to Lessor's acquisition of the Equipment prior to leasing the Equipment, and that Lessee accepts the terms and

limitation of any warranties, license, and/or Manufacturer Requirements (as defined herein) contained therein.  To the extent assignable by Lessor, all warranties and licenses made by the manufacturer of the Equipment are hereby assigned to Lessee for the lease term applicable to such Equipment.  At Lessee's sole expense and in Lessee's own name only, Lessor hereby authorizes Lessee to enforce any such warranties or license made with respect to the Equipment upon written notice to Lessor; and Lessor is under no obligation to enforce any warranties or license regarding the Equipment. Notwithstanding any of the foregoing, Lessee shall not commence any legal proceedings to enforce any warranty or license except upon the written consent of Lessor (which consent shall not be unreasonably withheld).  Lessor makes no representations or warranties as to the existence, sufficiency or enforceability of any warranties or licenses regarding the Equipment; and Lessee's sole remedy for any defect in or nonconformity of the Equipment is against the manufacturer thereof.

3.    TERM OF LEASE AND RENT.  This Lease Agreement commences on the Effective Date and will expire on February 14, 2026 (the "**Lease Term**").  During the Lease Term, Lessee shall pay Rent to Lessor in the amount of Sixty-Two Thousand Seven Hundred Twenty-Five and 61/100 Dollars ($62,725.61) per month until the expiration of the Lease Term.  Rent is due on the thirteenth (13th) day of each month with payments beginning on March 13, 2025.  All payments shall be made to Lessor at the office of Lessor set forth in the preamble hereof or such other address that Lessor may from time-to-time designate in writing.  All payments hereunder shall be applied to unpaid obligations then due hereunder at Lessor's discretion.  In the event Lessee fails to pay Lessor any Rent within five (5) days of its due date, Lessee shall pay unto Lessor a late payment charge in an amount equal to five percent (5%) of the amount of such late payment.

4.    DELIVERY AND REMOVAL OF EQUIPMENT.  The Equipment shall be delivered to Lessee's premises at Lessee's expense.  Lessor may enter upon any premises where the Equipment is located and remove it immediately, without notice or liability to Lessee, upon the expiration of the Lease Term, upon the occurrence of an Event of Default (as defined herein), or other termination of the Lease Agreement.  In such event, Lessee agrees to execute all documents as may reasonably be required by Lessor to effectuate removal of the Equipment.

5.    USE, MAINTENANCE AND MODIFICATION OF EQUIPMENT. Lessee shall use the Equipment within its recommended capacities and only for the purpose(s) for which it was designed. Lessee shall comply with all laws, regulations and ordinances relating to the possession and use of the Equipment ("**Safety Laws**").  At Lessee's expense, Lessee shall maintain the Equipment in good repair and working order, and shall promptly provide all parts, upgrades, modifications, environments and software required or recommended now and hereafter ("**Required Modifications**") by the manufacturer and supplier of the Equipment ("**Manufacturer**") at Lessee's own expense. Lessor shall have no obligation to deliver, install, test, adjust, maintain or service the Equipment or provide substitute or replacement Equipment; and Lessee shall arrange for and bear the full cost of all such matters.  As used herein, "**Manufacturer Requirements**" shall include all servicing, modifications and improvements recommended in any manuals, service bulletins and other publications from the Manufacturer now or hereafter as revised or supplemented. During the term of the Lease Agreement, a complete an accurate record of all maintenance, servicing, Required Modifications and Permitted Modifications (as defined below) to the Equipment will be maintained by Lessee (the "**Service Records**"), and the originals of such Service Records shall be Lessor's property. Upon request during the term of the Lease Agreement, Lessee shall allow Lessor to examine and copy the Service Record.

Without the prior written consent of Lessor and except for Required Modifications, Lessee shall not make any other modifications, additions or improvements to the Equipment unless such modifications do not; (i) impair the originally intended function, capabilities, specifications and performance of any unit of Equipment; (ii) impair any maintenance agreement(s), warranties or licenses with respect to any unit of

Equipment; (iii) violate any Manufacturer Requirements; (iv) adversely affect the Equipment's resale value; or (v) cause any damage to any unit of Equipment upon removal; in each case, as determined by Lessor ("**Permitted Modifications**").  Lessee shall remove all Permitted Modifications upon return of the Equipment without damage to the Equipment and so as to cause the Equipment to comply with all Safety Laws and with all Manufacturer Requirements then in effect.  All Permitted Modifications and any other accessories attached to the Equipment not so removed upon return of the Equipment shall be deemed to sole property of Lessor.

6.    OWNERSHIP AND INSPECTION OF EQUIPMENT.  The Equipment shall at all times remain the exclusive property of Lessor.  Lessee shall have no right, title or interest in the Equipment except as expressly set forth in this Lease Agreement.  Lessee shall give Lessor immediate notice of any attempt by third parties to seize any unit of the Equipment.  Lessee shall not change or remove any insignia, lettering or identification on the Equipment; and shall keep for safe-keeping any manuals, drawings, specifications, computers disks, maintenance agreements and Service Records or any other written information regarding the Equipment (and any associated hardware or software).  Lessor may supply Lessee with labels or other markings evidencing Lessor's interest in the Equipment and Lessee shall promptly affix same to the equipment in a prominent place.  Lessee shall maintain the Equipment as removable personal property notwithstanding the fact that the Equipment (or any part thereof) may become attached to, imbedded in or resting on any real property or any building thereon.  At any time during Lessee's ordinary business hours, Lessor, or its agents, upon reasonable notice, shall have the right to enter the premises where the Equipment is located to inspect and/or test the Equipment, and show the Equipment to prospective purchasers and lessees; and Lessee shall cooperate with Lessor in conducting such activities.

7.    LOSS OF USE AND DAMAGE TO THE EQUIPMENT. Lessee hereby assumes the entire risk of loss and damage to the Equipment from every cause whatsoever (notwithstanding the existence of any insurance on the Equipment in favor of Lessor).  If any unit of Equipment is damaged, Lessee shall place such Equipment in good repair and working order to the satisfaction of Lessor.  If any unit of Equipment is determined by Lessor in its sole discretion to be lost, stole or damaged beyond repair (hereinafter referred to as an "**Event of Loss**"), Lessee shall (at Lessor's option): (i) replace such Equipment with equipment of equivalent value, utility and characteristics; or (ii) pay Lessor in cash the Fair Market Value of such Equipment determined by Lessor on any reasonable basis plus any and all unpaid rents, late charges, and other amounts due.  Upon Lessee's payment in good funds of the amount required, this Lease Agreement shall terminate with respect to such unit of Equipment and Lessee shall (subject to the rights of any insurer) be deemed the owner of such Equipment "AS IS" and "WHERE IS" without any warranty (express or implied) by Lessor with respect to any matter whatsoever.  If, prior to the termination of the lease term, permanent or temporary use of any part of the Equipment shall be taken under the exercise of the power of eminent domain, Lessee shall cause the net proceeds of any condemnation award to be applied (at Lessor's option) toward: (i) the replacement, restoration or repair of such damaged Equipment; or (ii) satisfaction of Lessee's obligations hereunder.

8.    EQUIPMENT PURCHASE OR RETURN.  Lessee shall have the option to purchase the Equipment at the end of the Lease Term for One Dollar ($1.00).  If Lessee does not elect to purchase the Equipment at the end of the Lease Term, Lessee must, at its sole risk and expense, immediately return all of the Equipment to Lessor upon expiration of the Lease Term at such location and at such time as Lessor shall designate.  Lessee must notify Lessor of its decision to purchase or return the Equipment not less than ninety (90) days before the expiration of the Lease Term.  If Lessee does not notify Lessor of its decision to purchase the equipment, Lessee will have waived its option to purchase the Equipment at the end of the Lease Term.  If Lessee elects to return the Equipment to Lessor, within thirty (30) days after notification is required, Lessee ensures that the Equipment is available for examination by prospective buyers and/or lessees and inspection by Lessor.  Lessee must return to Lessor all originals of operator's manuals, maintenance manuals, Service Records or other materials regarding the Equipment.  If for any reason

Lessee shall fail to return the Equipment as specified herein, Lessee shall pay to Lessor rent equal to 150% of the Rent set forth herein for each month or fraction thereof that such Equipment remains unreturned as liquidated damaged for Lessor's inability to take possession of the Equipment and increased risk of damage to and loss of Equipment.

If Lessee does not elect to purchase the Equipment at the end of the Lease Term, Lessee will return the Equipment to Lessor at the place designated by Lessor, with the Equipment being in as good condition, appearance and running order as when originally delivered to Lessee, reasonable wear and tear excepted, and upon Lessee's failure to do so, Lessor may, in addition to any other rights or remedies it may have, repossess the same without prior notice or court order or process and such repossession costs, including reasonable attorney fees, will be borne by Lessee.  In the event such Equipment is not in the required condition when received or recovered by Lessor, Lessee will forthwith pay Lessor the full cost to restore it to such condition. Lessor will have ninety (90) days after expiration of this Lease to cause the Equipment to be removed from the premises, and Lessee will provide proper storage of the Equipment during such ninety (90)-day period without charge to Lessor.

9.  INSURANCE.  Lessee shall maintain at all times on the Equipment, at Lessee's expense, property damage, direct damage, liability insurance and such other insurance coverage as Lessor shall require in such amounts, against such risk and by such insurers as shall be satisfactory to Lessor.  Lessee further agrees that the property insurer must be licensed to do business in the state where the Equipment is located and have an A.M. Bet's Key Rating of at least "B+".  Property or physical damage insurance will be "comprehensive" or "all risk" coverage.  Insured values must be equal to the greater of the Equipment cost or the Fair Market Value of the Equipment at all times, and valuation of loss must be on a replacement cost basis.  Such policy providing insurance for damage to the Equipment shall name Lessor and/or it assigns as loss payee as Lessor's interest may appear and hall not have a deductible amount in excess of $5,000 or other policy limitations unsatisfactory to Lessor without the express written consent of Lessor.  Each insurance policy shall contain a clause requiring the insurer to give to Lessor at least thirty (30) days prior written notice of any alternation, cancellation, or other modification of the policy, and upon a written request from Lessor, a certificate or other evidence satisfactory to Lessor that such insurance coverage is in effect, provided however that Lessor shall be under no duty to ascertain as to the existence or adequacy of such insurance.  The insurance maintained by lessee shall be primary without any right of contribution from insurance which may be maintained by Lessor.

Lessor shall have the exclusive right, and Lessee hereby appoints Lessor as Lessee's attorney-in-fact (coupled with an interest), to make and settle any claims under, receive any payments on, and execute and endorse any documents, checks or drafts respecting to any insurance (and proceed therefrom) regarding the Equipment.  In the event any insurance proceeds are paid or payable with respect to any unit of Equipment, such insurance proceeds shall be applied (at Lessor's option) toward: (1) the replacement, restoration, or repair of such Equipment, or (2) satisfaction of Lessee's obligation hereunder.

Lessee agrees to give written notice to Lessor within five (5) days as to any damage to, or loss of, the Equipment or material damage or personal injury caused by the Equipment.  Lessee shall, at its own expense and cost, have the duty and responsibility to make all proofs of loss and take all other steps necessary to effect collections form underwriters for any loss under any of the above mentioned policies.

10. LIENS AND ENCUMBRANCES. Lessee shall keep the Equipment free and clear of all security interests, liens, encumbrances and claims of any kind.

11. PAYMENT OF LESSOR'S EXPENSES.  Lessee shall promptly pay all costs, charges, expenses and obligation of every kind and nature (including reasonable attorneys' fees of outside and in-house counsel) incurred by or on behalf of Lessor regarding the importation, shipment, delivery, possession, use,

lease, tax treatment, return, repossession, storage and transfer of any unit of Equipment whenever and however arising, and for any termination and/or amendment of this Lease Agreement and for the exercise of any rights or remedies with respect to this Lease Agreement.  In the event Lessee fails to procure or maintain the insurance required under Section 9 above, or fails to promptly pay any amounts required to be paid by Lessee herein, Lessor shall have the right (but shall not be obligated) to procure such insurance and/or pay such amounts on behalf of Lessee.  In such event, Lessee shall promptly reimburse Lessor on demand for the amount thereof.  If Lessee fails to pay any amount(s) when due hereunder, such amount(s) shall accrue interest paid at eighteen percent (18%) per annum or the highest rate permitted by law (whichever is lower).

12. REPRESENTATIONS, WARRANTIES AND COVENANTS.  (a) Lessee warrants that it is duly organized and in good standing under the laws of its state of organization; that Lessee is qualified to do business in those states where the Equipment is located; that the execution of this Lease Agreement has been duly authorized; and that the execution and performance of this Lease Agreement by Lessee will not cause Lessee to be in default under any material agreements or in violation of any applicable laws; (b) Lessee has full power, authority and legal right to execute, deliver, and carry out as Lessee the terms and provisions of this Lease Agreement and any other documents in connection with this Lease Agreement; (c) Lessee's execution, delivery, and performance of this Lease Agreement and any other documents and agreements referred to herein, and the performance of its obligations under this Lease Agreement have all been authorized by all necessary corporate action, do not require the approval or consent of stockholders, or of any trustee or holder of any indebtedness or obligation of Lessee and will not violate any law, governmental rule, regulation, or order binding upon Lessee or any provision of any indenture, mortgage, contract or other agreement to which Lessee is a party or by which it is bound or to which it is subject, and will not violate any provision of the organizational documents of Lessee, including but not limited to Lessee's operating agreement and articles of organization; (d) except as disclosed by Lessee to Lessor in the APA, to Lessee's knowledge there are no pending or threatened investigations, actions, or proceedings before any court of administrative agency or other tribunal body, which seek to question or set aside any of the transactions contemplated by this Lease Agreement, or which, if adversely determined, would materially affect the condition, business, or operation of Lessee; (e) except as disclosed by Lessee to Lessor in the APA, to Lessee's knowledge Lessee is not in default in any material manner in the payment or performance of any of its obligations or in the performance of any contract, agreement, or other instrument to which it is party or by which it or any of its assets may be bound; (f) the balance sheet of Lessee as of the end of its most recent fiscal year and the related profit and loss statement of Lessee for the fiscal year ended on said date, including the related schedules and notes, together with the report of an independent certified public accountant, if heretofore delivered to Lessor, are all true and correct and present fairly the financial position of Lessee as at the date of said balance sheet and the results of the operations of Lessee for said fiscal year; (g) all proceedings required to be taken to authorize the lease of the Equipment from Lessor and to protect Lessor's interest in such Equipment, free and clear of all liens and encumbrances whatsoever, have been taken; (h) Lessee has no significant liabilities (contingent or otherwise) which are not disclosed by or reserved against the financial statements referred to in (f) above, if any; (i) all financial statements referred to above have been prepared in accordance with generally accepted accounting principles and practices in the United States and have been applied on a basis consistently maintained throughout the period involved; (j) there has been no change which would have a material adverse effect on the business or financial condition of Lessee from that set forth in the balance sheet referred to in (f) above, if any; (k) no authorization, consent, approval, license, exemption of or filing or registration with any court, governmental unit or department, commission, board bureau, agency instrumentality or the like is required or necessary for the valid execution and delivery of this Lease Agreement, any bill of sale, and the other documents and agreements referred to herein; (l) this Lease Agreement and any accompanying documents, having been duly authorized, executed and delivered to Lessor constitute legal, valid and binding obligations of Lessee, enforceable against Lessee in accordance with the terms thereof except as such terms may be limited by bankruptcy, insolvency, or similar laws affecting the enforcement of

creditor's rights generally, (m) the Equipment is personal property and neither real property nor a fixture; (n) as of the Effective Date, a reasonable estimate of the estimated Fair Market Value of such item of Equipment at the end of the Lease Term will be at least 10% of Lessor's cost thereof as outlined in the Schedule (without including in such value any increase or decrease for inflation or deflation, and after subtracting form such value any cost for removal and deliver of possession of Equipment to Lessor at the end of the lease term thereof); and (o) as of the Effective Date, a reasonable estimate of the estimated useful life of the Equipment at the end of the Lease Term will be at least two years beyond the end of the Lease Term.

13.   INDEMNITY.  Notwithstanding the existence of any insurance in favor of Lessor, Lessee shall promptly defend, indemnify and save Lessor harmless from and against: (a) any and all loss of or damage to the Equipment; and (b) any claim, action, demand, proceeding, or liability for any damage loss, injury, cost or expense (including reasonable attorney's fees) which Lessor may be subject to: (i) relating to the construction, importation, exportation, delivery, installation, ownership, sale, lease, transfer, storage, nonacceptance, rejection, return, or repossession of the Equipment (or any part thereof); (ii) resulting from the use, maintenance, repair, replacement, operation or condition of the Equipment (or any part thereof); (iii) arising by reason of any act or omission of Lessee or Lessee's violation of any law, regulation or ordinance pertaining to the Equipment; (iv) as a result of any claim for patent, copyright, trademark or other proprietary right infringement relating to the equipment or the use thereof; (v) as a result of any tort, negligence or strict liability claim respecting the Equipment and/or the use thereof (including, without limitation, any contribution and/or subrogation claims relating thereto); and/or (vi) as a result of any third party claim to the Equipment.  The foregoing are collectively called the "Indemnity Claims".  Notwithstanding the foregoing, Lessee shall not be obligated to indemnify Lessor for any Indemnity Claim to the extent actually and proximately caused by the willful misconduct of Lessor.

14.   DEFAULT.  Any of the following shall constitute an event of default under this Lease Agreement (each, an "**Event of Default**"):  (a) Lessee's failure to pay any amounts due under this Agreement when due; (b) the unauthorized removal of the Equipment from the location(s) authorized by Lessor; (c) Lessee's unpermitted assignment of any interest in this Lease Agreement or in the Equipment; (d) Lessee making an assignment for the benefit of its creditors, or becoming subject to any proceedings under the U.S. Bankruptcy Code or any state reorganization, receivership, insolvency or dissolution proceedings; (e) the filing of any lien, levy, attachment or judgment affecting the Equipment which has not been released or stayed on appeal within ten (10) business days of Lessee's knowledge thereof, or for which a bond satisfactory to Lessor in the full amount of such lien, levy attachment or judgment has not been obtained in favor of Lessor within ten (10) business days of Lessee's knowledge thereof; (f) Lessee's failure to cure any breach of any other provision of this Lease Agreement within ten (10) business days of Lessee's knowledge thereof or of Lessee's receipt of Lessor's written notice thereof (whichever occurs earlier); (g) Lessee making any misrepresentations to Lessor now or hereafter; (h) Lessee being in default under any other agreement with Lessor or any of its affiliates or under any material third party agreement which has not been cured as provided; (i) any adverse material change in Lessee's financial condition or business operations or any material change in the ownership of Lessee in Lessor's reasonable determination; or (j) Lessee sells, transfers or disposes of all or substantially all of its assets or property or a material portion thereof, or merges with any other entity, or engages in any form of corporate reorganization or recapitalization without the prior written consent of the Lessor; or (k) Lessee's failure to comply with any covenant, condition or obligation related to this Lease Agreement.  Upon the occurrence of an Event of Default, Lessor's obligations under this Lease Agreement shall automatically terminate unless otherwise agreed in writing by Lessor.

As used in this Section 14, the term "Lessee" also includes any guarantor (whether now existing or hereafter arising) relating to all or any part of Lessee's obligations under this Lease Agreement, and the term "Lease

Agreement" also includes any guaranty or letter of credit (whether now existing or hereafter arising) relating to all or any part of Lessee's obligations under this Lease Agreement.

15. REMEDIES. (a) Upon the occurrence of an Event of Default hereunder (and regardless of Lessor's termination of this Lease Agreement), Lessor shall have the non-exclusive option to: (i) declare the present value of the aggregate Rents immediately due and payable, (ii) declare all other amount(s) due to Lessor hereunder immediately due and payable, (iii) reserved; (iv) take possession of the Equipment and remove same from its existing location(s) without further notice to or consent of Lessee; and store and/or dispose (by public or private sale or otherwise) of the Equipment at its then existing location(s) at no charge to Lessor; (v) collect from Lessee all expenses associated with enforcing remedies hereunder including but not limited to reasonable attorney fees, repossession, transportation, storage and remarketing expenses; or (vi) assert any other remedies available to Lessor at law or in equity (including, without limitation, under the Uniform Commercial Code). For purposes of computing present value hereunder, the discount rate shall be a rate per annum equal to the lowest published Ask Yield of any U.S. Treasury Bond, Note or Bill set forth in the Wall Street Journal, Treasury Bonds, Notes and Bills section, having a maturity date closest to the originally scheduled termination date of this Lease Agreement or in the event this source is not available, such other source as Lessor shall reasonably determine. Any return and/or repossession of the Equipment shall not waive or impair any of Lessor's rights or remedies. Except as otherwise provided for herein or by law, all amount(s) due Lessor after the occurrence of an Event of Default shall be due and payable without any further notice or demand by Lessor, and without regard to any action taken by Lessor regarding the Equipment. All amounts payable herein by Lessee after the occurrence of an Event of Default shall bear interest until paid at the rate of 18% per annum or the highest rate permitted by law (whichever is lower). Lessee releases Lessor from any requirement to post a bond or surety regarding any repossession or disposition of the Equipment. Lessee grants Lessor a security interest and right of setoff against all deposits, account balance and credits with or due from Lessor (and/or its affiliates) now existing or hereafter arising, and all proceeds thereof.

In the event Lessor accepts in writing the return of any unit of Equipment, Lessor shall use its reasonable efforts thereafter to sell and/or re-let such Equipment, and Lessee agrees that any such attempt shall fully satisfy Lessor's obligation to mitigate its damages. After deducting all expenses of retaking, repairing, holding, transporting, meeting the return requirements set forth in Section 8, selling and/or re-letting the Equipment, the net proceeds (if any) from such sale or re-letting by Lessor shall be applied against Lessee's obligation hereunder. The proceeds of any sale, re-lease or other disposition (if any) shall be applied in the following priorities: (i) first, to pay all Lessor's costs, charges and expenses in taking, removing, holding, meeting the return requirements, selling, re-leasing and disposing of the Equipment; (ii) second, to the extent not previously paid by Lessee (or by a guarantor of Lessee's obligations hereunder) to pay Lessor all amounts due from Lessee hereunder; (iii) third, to reimburse Lessee (or any guarantor) for any sums previously paid as damages to Lessor by Lessee (or such guarantor); and (iv) lastly, any surplus and all other amounts attributable to the Equipment shall be retained by Lessor. Lessor shall have the right to seek a deficiency from Lessee notwithstanding Lessor's repossession or abandonment of the Equipment, or Lessor's sale or re-letting the Equipment to a third party and Lessor shall determine the present value of any future committed lease payments due from a third party lessee in its reasonable opinion. After the occurrence of an Event of Default, Lessee hereby irrevocably appoints Lessor as its attorney-in-fact (coupled with an interest) to do all things necessary to carry out Lessee's obligations under this Lease Agreement and with respect to the Equipment. All remedies granted to Lessor herein and at law are cumulative, and may be exercised concurrently or separately. No right or remedy is exclusive of any other right or remedy. Notwithstanding any repossession, re-letting or sale of any unit of Equipment by Lessor and/or termination of this Lease Agreement, Lessee shall remain fully liable for the performance of its obligations herein. In the event that this Lease Agreement is determined to be a transaction intended to create a security interest within the meaning of UCC Article 9, then the Lessor shall have all of the rights and remedies provided by UCC Article 9 plus the other remedies provided for herein.

16.   ASSIGNMENT.  This Lease Agreement shall insure to the benefit of, and shall be binding upon, the successors and assigns of the parties hereto (whether by operation of law or by agreement) except as provided for herein.  Any or all of Lessor's rights and obligations under this Lease Agreement (or any part thereof) and/or any or all of Lessor's rights and interest in the Equipment (or any part thereof), may be sold, assigned or pledged to a third party ("**Assignee**") without notice to or the consent of Lessee.  Lessee agrees that any Assignee may enforce its rights independent of the rights of Lessor or any other Assignee under this Lease Agreement.  Lessee acknowledges that any such sale, assignment, or pledge of any or all of Lessor's rights and/or obligations hereunder and/or rights and interests in the Equipment shall not be deemed to materially change Lessor's duties or obligations hereunder nor increase the burdens or risks imposed on Lessee for purposes of Article 2A of the Uniform Commercial Code.  No breach or default by Lessor hereunder shall excuse the full and timely performance by Lessee of its obligations under this Lease Agreement to Assignee of Lessor.  Lessee agrees to execute a written acknowledgement of the matters set forth herein in favor of (and to the satisfaction of such successor or assignee) upon request.  LESSEE SHALL NOT ASSIGN, TRANSFER, OR PLEDGE ANY RIGHT, INTEREST OR OBLIGATION UNDER THIS LEASE AGREEMENT (OR ANY PART THEREOF), NOR PERMIT THE EQUIPMENT TO BE SUBLEASED OR USED BY ANY PARTY OTHER THAN LESSEE AND ITS EMPLOYEES. ANY SUCH UNAUTHORIZED ASSIGNMENT, TRANSFER, PLEDGE, OR USE SHALL BE DEEMED AN EVENT OF DEFAULT HEREUNDER.  For purposes of this Lease Agreement, a change of control of the ownership of Lessee for any reason shall be considered an assignment of this Lease Agreement.

17.   COVENANTS.  Lessee covenants and agrees as follows: Lessee shall execute and deliver to Lessor such other documents as Lessor may reasonably deem necessary to evidence or protect Lessor's interests in the Equipment and Lessor's rights under this Lease Agreement.

Lessee agrees it shall not:  (a) liquidate, dissolve or suspend business; (b) sell, transfer or otherwise dispose of all or a majority of its assets, except that Lessee may sell its inventory in the ordinary course of its business; (c) enter into any merger, consolidation or similar reorganization unless it is the surviving entity; (d) transfer all or any substantial part of its operations or assets outside of the United States of America; or (e) without 30 days advance written notice to Lessor, change its name, chief place of business or state of organization.

Lessee authorizes Lessor to file, at Lessor's option, any such instruments (including financing statements and certificates of title) without Lessee's signature and if such signature is required by law, Lessee appoints Lessor as Lessee's attorney-in-fact to execute such items, in Lessee's name without restriction, and Lessor's expenses with respect thereto shall be payable by Lessee upon demand.  Lessee will inform Lessor of any changes in official name or state of organization of Lessee, within ten (10) days of such changes.  Upon request by Lessor, Lessee shall verify in writing the exact location of the Equipment and identify any unit of Equipment moved since the date of any previous verification, and provide Lessor with maintenance information regarding the Equipment.  Lessee shall provide written notice to Lessor promptly upon the occurrence of any Event of Default or any event which, with the lapse of time or giving of notice, or both, would become an Event of Default; and promptly upon Lessee becoming aware of any alleged violation of applicable law relating to the Equipment or this Lease Agreement.

18.   AMENDMENT.  Regardless of any prior, present or future oral agreement or course of dealing, no term or condition of the Lease Agreement may be amended, modified, discharged, cancelled or terminated except by a written instrument signed by the party to be bound.

19. GOVERNING LAW AND CONSTRUCTION.  (a) This Lease Agreement and each Schedule shall be construed without regard to any presumption or rule requiring construction against the party causing this

Lease Agreement to be drafted.  If more than one Lessee is named in this Lease Agreement, the liability of such Lessees shall be joint and several.  If any provision of this Lease Agreement or the application thereof to any party is held invalid or unenforceable for any reason, the other provisions of this Lease Agreement and their application shall be unaffected thereby, and shall remain in full force and effect.  No delay on the part of the Lessor in exercising any right, power, or remedy hereunder shall operate as a waiver thereof; and no single or partial exercise of any right, power or remedy by Lessor hereunder shall preclude any further exercise thereof (or the exercise of any other right, power or remedy).  The validity, interpretation and enforcement of this Lease Agreement shall be governed by the laws of the State of Illinois (irrespective of its choice of laws rules).  The parties agree that this Lease Agreement is deemed to be executed, effective and performed in the State of Illinois by virtue of Lessor executing and accepting this Lease Agreement in Ohio and all rental payments being paid to Lessor in Illinois.  All claims and other matters relating to this Lease Agreement and the Equipment (as between Lessor and Lessee) shall be heard in any state or federal court located in Livingston County, Illinois; and the parties hereby consent to the personal jurisdiction of such courts.  Nothing in this Section 19 shall affect or impair Lessor's right to serve legal process in any manner or Lessor's right to bring any action or proceeding against Lessee or the Equipment in the courts of any other jurisdiction.

20. NOTICES.  The giving of all notices required herein shall be sufficient if made in writing and delivered personally, sent via facsimile (transmission confirmed) or electronic mail (receipt confirmed) or mailed to the party involved at the address set forth in the preamble of this Lease Agreement (or at such other address as each party may provide in writing).  If mailed, such notice shall be deemed given when deposited in the U.S. mail fully addressed with postage prepaid.

21.  MISCELLANEOUS.  Subject to the limitations herein, this Lease Agreement shall be binding upon and insure to the benefit of the parties hereto and their respective heirs, administrators, successors and assigns.  This Lease Agreement may be executed in any number of counterparts, which together shall constitute a single instrument.  Section and paragraph headings in this Lease Agreement are for convenience only and have no independent meaning.  The terms of this Lease Agreement shall be severable and if any term thereof is declared unconscionable, invalid, illegal or void, in whole or in part, the decision so holding shall not be construed as impairing the other terms of this Lease Agreement and this Lease Agreement shall continue in full force and effect as if such invalid, illegal, void or unconscionable term were not originally included herein.  All indemnity and reimbursement obligations of Lessee under this Lease Agreement and all rights, benefits and protections provided to Lessor by warranty disclaimers shall survive the cancellation, expiration or termination of this Lease Agreement.

**22.       JURY WAIVER.  ALL PARTIES TO THIS LEASE AGREEMENT WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY ANY PARTY AGAINST ANY OTHER PARTY ON ANY MATTER WHATSOEVER ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY RELATED TO THIS LEASE AGREEMENT.**

[Page intentionally left blank. Signature page follows.]

IN WITNESS WHEREOF, the parties hereto have executed this Lease Agreement as of the Effective Date.

TECHNICAL METALS, INC.,
an Illinois corporation

By: _____

Name: _____

Title: _____


TECHMETALS, LLC,
an Illinois limited liability company

By: *Jason Azevedo*
 ——6BC97D79CD3945C...

Name: Jason Azevedo

Title: manager

IN WITNESS WHEREOF, the parties hereto have executed this Lease Agreement as of the Effective Date.

TECHNICAL METALS, INC.,
an Illinois corporation

By: _____

Name: Gerald L. Hoffman

Title: ___President owner_____

TECHMETALS, LLC,
an Illinois limited liability company

By: _____

Name: _____

Title: _____

**Exhibit A**

**SCHEDULE OF EQUIPMENT**

| Description | Model | Serial Number |
|---|---|---|
| HWACHEON HORIZONTAL MACHINING CENTER | H8 8K CTS 60T 0.001? | M367279DZA |
| CHIP CONVEYOR JORGENSEN H8 | 43-0450 | A241127-1 |
| **GRAND TOTAL** | **$723,000.00** | |

## PAYMENT SCHEDULE

Equipment
Cost:                                                                      $  723,000.00
   see Equipment Schedule for detail


Lease commencement date: February 20, 2025


| Month | Payment | Interest | Principal | Balance |
|---|---|---|---|---|
|  |  | 7.5% |  | $  723,000.00 |
| 1 | $  62,725.61 | $  4,518.75 | $  58,206.86 | $  664,793.14 |
| 2 | $  62,725.61 | $  4,154.96 | $  58,570.65 | $  606,222.49 |
| 3 | $  62,725.61 | $  3,788.89 | $  58,936.72 | $  547,285.77 |
| 4 | $  62,725.61 | $  3,420.54 | $  59,305.07 | $  487,980.70 |
| 5 | $  62,725.61 | $  3,049.88 | $  59,675.73 | $  428,304.97 |
| 6 | $  62,725.61 | $  2,676.91 | $  60,049.70 | $  368,256.27 |
| 7 | $  62,725.61 | $  2,301.60 | $  60,424.01 | $  307,832.26 |
| 8 | $  62,725.61 | $  1,923.95 | $  60,801.66 | $  247,030.60 |
| 9 | $  62,725.61 | $  1,543.94 | $  61,181.67 | $  185,848.93 |
| 10 | $  62,725.61 | $  1,161.56 | $  61,564.05 | $  124,284.88 |
| 11 | $  62,725.61 | $  776.78 | $  61,948.83 | $  62,336.05 |
| 12 | $  62,725.61 | $  389.60 | $  62,336.05 | $  0.00 |

0157822.0790081  4920-5165-1610v3